**Jeff C. GERST and Kari R. Gerst, Appellants,**

v.

**Billy G. MARSHALL, Jr., Cindy R. Marshall, and Reif Oil Co., Appellees.**

No. 95–499.

Supreme Court of Iowa.

June 19, 1996.

---

Brenda Myers and Kathryn Barnhill of Barnhill & Goodman, P.C., Des Moines, for appellants.

Mary Ann Brown of Bauer, Schulte, Hahn, Swanson & Brown, Burlington, for appellees Marshalls.

H. Craig Miller of Hirsch, Adams, Krekel, Putnam, Cahill & Miller, Burlington, for appellee Reif Oil Co.

Considered by HARRIS, P.J., and LARSON, CARTER, SNELL, and TERNUS, JJ.

TERNUS, Justice.

Appellants, Jeff C. Gerst and Kari R. Gerst, sued appellees, Billy G. Marshall, Jr., Cindy R. Marshall and Reif Oil Co., after the Gersts discovered petroleum contamination on land they had purchased from the Marshalls. The district court granted summary judgment to the Marshalls and Reif Oil, concluding the Gersts had failed to generate factual questions on several issues. Because we agree the Gersts have not produced sufficient evidence to allow a fact finder to conclude conduct of the Marshalls or Reif Oil caused the contamination on the Gersts' property, we affirm the grant of summary judgment.

### I. Scope of Review.

■ We review a summary judgment ruling for error. *Benavides v. J.C. Penney Life Ins. Co.*, 539 N.W.2d 352, 354 (Iowa 1995). Summary judgment may be entered if the record shows "no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Iowa R.Civ.P. 237(c). Thus, "we examine the

record before the district court to decide whether a genuine issue of material fact exists and whether the court correctly applied the law." *Benavides*, 539 N.W.2d at 354. In doing so, we view the facts in the light most favorable to the party opposing the motion for summary judgment. *Hagen v. Texaco Refining & Mktg., Inc.*, 526 N.W.2d 531, 538 (Iowa 1995).

## II. *Background Facts and Proceedings.*

The record before the district court, when viewed in the light most favorable to the Gersts, shows the following facts. The Marshalls operated a gas station on the involved property from 1985 until 1988 when they sold the property to the Gersts. During the time the Marshalls owned the property, Reif Oil supplied petroleum products to the service station.

In October 1987, the Marshalls installed two new underground storage tanks (USTs), lines and related equipment on the southern part of the property. Ron Walker, an independent contractor who installed the new tanks, tested the tanks and related equipment twice after they were installed; neither test showed a leak.

Walker and Billy Marshall testified the soil in the area of the new tanks was not discolored, and there was no smell of gasoline. Nevertheless, a soil sample taken from this area at the time of installation revealed gasoline byproducts in the soil, but not above acceptable levels.

The Marshalls installed four sniffer wells near the new tanks. Billy Marshall checked these wells, every few days at first and then weekly, by sticking his nose down the pipe and sniffing.[1] About once a week he would take water out of the sniffer wells that had water in them to look for evidence of contamination; he observed none.

The next spring, shortly before they sold the property, the Marshalls removed two old USTs from the northern part of the property and installed four monitoring wells around the old tank pit. Billy Marshall smelled petroleum when the concrete was first removed and during the drilling of one of the monitoring wells, but again the soil around the tanks was not discolored. Marshall did not further investigate the smell or inform the Iowa Department of Natural Resources (DNR). Thereafter, Marshall checked the monitoring wells weekly or biweekly and discovered no signs of contamination.[2]

When the Gersts bought the property, the Marshalls gave them a warranty deed and a groundwater hazard statement saying there were no known hazardous wastes on the property. Billy Marshall did not tell the Gersts he had smelled petroleum when the old tanks were removed.

The Gersts did not check the monitoring wells after they purchased the property and were cited by the DNR in 1990 for their failure to do so. Thereafter, the Gersts began to keep records of their inspections of the monitoring wells, although Jeff Gerst admitted that not all the inspections recorded were actually performed.

During the time the Gersts owned and operated the service station several accidental spills occurred in the vicinity of the new tanks. On occasion, customers would pull away from the pump with the nozzle still in their car, resulting in the hose being pulled from the dispenser or the nozzle being pulled off the hose. In May 1990, a diaphragm in the gas dispenser broke causing a release of gasoline. Ron Walker was called by the Gersts to make the repairs. Walker testified the soil underneath the pump island was wet with gasoline and "[y]ou could smell the gas fumes real bad." The Gersts did not clean up these releases; they merely hosed down the area.

---

1. The correct way to check a sniffer well is with a machine that can detect petroleum vapors. Neither the Marshalls nor the Gersts had such a machine.

2. Although a jury would not be required to accept Marshall's testimony he discovered no contamination in his inspections of the sniffer wells and monitoring wells, the Gersts offered no evidence in support of their resistance to the defendants' motions for summary judgment showing signs of contamination in the wells prior to the sale of the property to the Gersts. The Gersts had the burden of proof on this issue. See Iowa R.App.P. 14(f)(5).

Two years after the Gersts purchased the property, in the summer of 1990, they discovered contamination on the property. Testing showed contamination in the area of the new tanks and at the old pit; the highest concentration was at the dispenser island. The Gersts continued to operate the service station until the summer of 1992, when they closed it.

In 1993, the Gersts sued the Marshalls and Reif Oil on theories of negligence, strict liability and res ipsa loquitur. They also sued the Marshalls on a theory of fraudulent misrepresentation and alleged a citizen action against the Marshalls under Iowa Code section 455B.111 (1993). After the lawsuit was filed, a line and tank tightness test was performed at the request of the Marshalls and Reif Oil. This 1994 test showed the equipment installed in 1987 was sound and not leaking.

The Gersts filed a motion for partial summary judgment, claiming they were entitled to judgment as a matter of law on their claim against the Marshalls based on section 455B.111. The Marshalls and Reif Oil also filed motions for summary judgment, seeking judgment in their favor on all of the Gersts' claims.

The summary judgment record included the deposition testimony of experts. Although the Gersts' expert testified the Marshalls should have reported to the DNR the odor in the soil at the time the old tanks were removed, the expert could not say what size of release was indicated by the presence of that odor. Similarly, the expert was unable to offer an opinion on what a groundwater or soil test in the area where gasoline was smelled would have shown in 1988.

The experts for the Gersts and the defendants testified there was no evidence the fuel delivery system was improperly installed or maintained. Nevertheless, they identified the contaminant on the property as gasoline and the source of the gasoline as the tanks and associated equipment. They could not specify the precise location within the system from which the gasoline was released, nor could they state what caused the release of gasoline. The experts merely testified there could be several potential causes, including

system leaks, customer overfills and accidents at the island. Most importantly, both experts agreed the time the contamination occurred could not be pinpointed. Jeff Gerst testified he could only speculate on the cause and timing of the contamination.

The trial court denied the Gersts' motion and granted the Marshalls' and Reif Oil's motions, dismissing all claims made by the Gersts. The Gersts appealed. Because we find the issue of causation to be dispositive, we address only that issue.

### III. *Requirement of Causation.*

The parties do not dispute causation is an element of the tort theories alleged by the Gersts. *See Hyler v. Garner,* 548 N.W.2d 864, 873 (Iowa 1996) (including proximate cause as an element of fraudulent misrepresentation); *Hagen,* 526 N.W.2d at 537 (noting common-law strict liability theories require showing of proximate cause); *Bickford v. American Interinsurance Exch.,* 224 N.W.2d 450, 455–56 (Iowa 1974) (negligence is actionable only if it is a proximate cause of injury). The parties disagree, however, on whether causation is an element of a citizen action under Iowa Code section 455B.111.

Chapter 455B and the administrative rules implementing it regulate the handling of releases from USTs and the removal of USTs. *See* Iowa Code §§ 455B.471–.479 (1993); Iowa Admin.Code ch. 567–135 (1996). Section 455B.111 allows "citizen actions" to enforce chapter 455B and the governing regulations:

1. Except as provided in subsection 2, a person *with standing* as provided in subsection 3 may commence a civil action in district court on the person's own behalf against any of the following:

a. A person, including the state of Iowa, for violating any provision of this chapter or a rule adopted pursuant to this chapter.

Iowa Code § 455B.111(1) (1993) (emphasis added). A person has standing "if the person is *adversely affected by* the alleged violation." *Id.* § 455B.111(3) (emphasis added). We conclude the standing requirement incor-

porates causation as an element of a section 455B.111 action.

█ When we apply a statute, we give the words used by the legislature their plain and ordinary meaning unless the words are defined by the legislature or have a particular and definite meaning in law. *State v. Ahitow,* 544 N.W.2d 270, 272 (Iowa 1996). Chapter 455B does not define the phrase "adversely affected by," nor are we aware of any particular legal meaning given to this phrase. Consequently, we look to the dictionary definition of these words. *See id.; State v. Romeo,* 542 N.W.2d 543, 548 (Iowa 1996).

The dictionary defines "adversely" as "in an adverse or hostile manner." *Webster's Third New Int'l Dictionary* 31 (1993). The word "adverse" means "in opposition to one's interests: detrimental, unfavorable." *Id.* Webster's defines "affect" as "to act upon," "to produce an effect ... upon," or "to produce a material influence upon." *Id.* at 35. Finally, the preposition "by" means "through the means or instrumentality of," "through the work or operation of," or "in consequence of; as a result of." *Id.* at 307.

█ Based on the ordinary meaning of these words, we conclude "a person adversely affected by the alleged violation" is someone whose interests have been unfavorably affected as a result of or in consequence of the statutory violation. In other words, to have standing to bring a citizen action under section 455B.111, a plaintiff must be able to prove he has been damaged *as a result of* the defendant's conduct. We conclude the statutory language implicitly includes a causation requirement. *Cf. Hagen,* 526 N.W.2d at 537 (noting statutes imposing liability on animal owners for damages "done by" the animal "implicitly require[ ] a causal connection between the animal's actions and the damages sought by the plaintiff").

To avoid a causation requirement under section 455B.111, the Gersts rely on cases interpreting the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. §§ 9601–9675 (1995), as eliminating the need to establish a causal connection between the release of a defendant's hazardous substances and the plaintiff's cleanup costs. *See, e.g., Farmland Indus., Inc. v. Morrison–Quirk Grain Corp.,* 987 F.2d 1335, 1339 (8th Cir.1993) (liability under CERCLA "is not dependent on any showing of causation or fault"); *United States v. Alcan Aluminum Co.,* 964 F.2d 252, 265 (3rd Cir.1992) ("[V]irtually every court that has considered this question has held that a CERCLA plaintiff need not establish a direct causal connection between the defendant's hazardous substances and the release or the plaintiff's incurrence of response costs."). The problem with this reasoning is the Gersts are not basing their claim on a federal statute; their claim is based on section 455B.111. CERCLA was drafted specifically to exclude the concept of causation as an element of recovery. *United States v. Monsanto Co.,* 858 F.2d 160, 169–70 (4th Cir.1988), *cert. denied,* 490 U.S. 1106, 109 S.Ct. 3156, 104 L.Ed.2d 1019 (1989). The language of section 455B.111 is significantly different. *Compare* Iowa Code § 455B.111 (1993) *with* 42 U.S.C. § 9607 (1995). Therefore, the cases interpreting CERCLA are inapposite.

The Gersts contend requiring causal connection confuses causation with standing. We have held, however, that a complaining party, to have standing, must have "a specific, personal, and legal interest in the litigation, *and be injuriously affected.*" *Hawkeye Bancorporation v. Iowa College Aid Comm'n,* 360 N.W.2d 798, 801 (Iowa 1985) (emphasis added) (adopting two-prong test for standing). Thus, even traditional standing principles anticipate a causal relationship between a plaintiff's interests and the challenged conduct. Consequently, our interpretation of section 455B.111(3) is consistent with the legislature's use of the word "standing" rather than "causation."

In conclusion, to bring an action under section 455B.111, the Gersts must have standing. To show standing as defined in section 455B.111(3), they must establish the Marshalls' violation of chapter 455B.111 caused harm to the Gersts. Consequently, causation is an element of recovery in a citizen action brought pursuant to chapter 455B. We now consider whether a factual

question was generated on the issue of causation.

## IV. Existence of Factual Question on Causation.

The district court ruled there was insufficient evidence of causation to generate a jury question on this issue:

Because the plaintiffs are unable to present evidence other than speculation and conjecture concerning the time when the damage occurred or the manner in which it occurred, the jury would be left with no factual basis upon which to base a verdict in favor of the plaintiffs. In other words, the plaintiffs have provided no set of facts which the jury could point to and find to be the instrumentality which caused the harm complained of.

The Gersts argue on appeal the district court applied an incorrect standard for causation because it required proof of "one, specific proximate cause of damages within a reasonable degree of scientific certainty." They claim their experts "identified the most probable sources" of the contamination and were unable to "pinpoint the exact source and the exact time of releases due in large part to limitations in scientific technology."

■ A. *Definition of causation.* Any discussion of whether a factual issue exists on the issue of causation must begin with a definition of that term. Our cases defining causation have not been entirely consistent, due in part to differing terminology used by the authorities upon which we have relied. *Compare* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* §§ 41–42, at 263–280 (5th ed. 1984) (using terms "causation in fact," and "proximate cause" or "legal cause," the latter two terms referring to the policy decision whether to hold the defendant responsible for consequences his conduct has in fact produced) [hereinafter *Prosser* ] *with Restatement (Second) of Torts* § 431 (1965) (using term "legal cause" to include both cause in fact and Prosser's proximate cause) [hereinafter *Restatement Second* ]. In any event, under any definition of causation, this element has two components: (1) the defendant's conduct must have *in fact caused* the plaintiff's damages (generally a factual inqui-

ry) and (2) the policy of the law must require the defendant to be *legally responsible* for the injury (generally a legal question).

Early Iowa tort law utilized a but-for test for causation in fact:

[T]o ascertain whether or not a thing complained of is the … cause [in fact] of an injury, it is necessary to determine what was the thing amiss, either of omission or commission, *without which* the injury or loss would not have occurred.

*Eclipse Lumber Co. v. Davis,* 196 Iowa 1349, 1356, 1362, 195 N.W. 337, 340, 342–43 (1924) ("essential that appellees establish by a preponderance of the evidence their claim that, *but for* the blocking of the street, the fire truck would have reached the fire in time") (emphasis added). In cases of concurrent causes, however, we followed the rule that "the fact that some other cause operates with the defendant's negligence to produce the injury [does not] relieve the defendant if the injurious result is traceable *in some material degree* to his want of due care." *Swaim v. Chicago, R.I. & P. Ry.,* 187 Iowa 466, 471, 174 N.W. 384, 386 (1919) (emphasis added); *accord Gould v. Schermer,* 101 Iowa 582, 588, 70 N.W. 697, 699 (1897) ("[T]he mere fact that some other cause operates with the negligence of the defendant to produce the injury does not relieve the defendant from liability. His original wrong, concurring with some other cause, … makes him liable. …").

These rules were consistent with the general law on causation that required proof the plaintiff's injuries would not have occurred *but for* the defendant's negligence *except* where "two causes concur to bring about the event, and either one of them, operating alone, would have been sufficient to cause the identical result." *See Prosser* § 41, at 266. In the latter situation, where application of the but-for test would allow both tortfeasors to avoid liability, courts made the policy decision to nevertheless impose liability "if [the defendant's conduct] was a material element and a *substantial factor* in bringing [the event] about." *Id.* at 267 (emphasis added); *see Anderson v. Minneapolis, St. Paul & Sault Ste. Marie Ry.,* 146 Minn. 430, 179 N.W. 45 (1920) (creating a broader rule for concurrent causes). Thus, the substantial

factor test was originally intended to address a legal causation issue, not one of causation in fact. *Prosser* § 41, at 43 (Supp.1988) (in this context substantial factor "is a formulation concerning legal significance rather than factual quantum"); Bert Black & David H. Hollander, Jr., *Unraveling Causation: Back to the Basics,* 3 U.Balt.J.Envtl.L. 1, 4 (1993) [hereinafter "Black Article"]; Richard W. Wright, *Causation in Tort Law,* 73 Cal. L.Rev. 1735, 1781 (1985) [hereinafter "Wright Article"].

Under the Restatement formulation of "legal cause" [3] a plaintiff must prove (a) the defendant's conduct "is a substantial factor in bringing about the harm, and (b) there is no rule of law relieving [the defendant from liability]." *Restatement Second* § 431. Traditional causation-in-fact analysis (the but-for requirement and the substantial factor exception for concurrent causes) was incorporated into the Restatement Second's new "substantial factor" test in section 432:

(1) Except as stated in Subsection (2), the actor's negligent conduct is not a substantial factor in bringing about harm to another if the harm would have been sustained even if the actor had not been negligent.
(2) If two forces are actively operating, one because of the actor's negligence, the other not because of any misconduct on his part, and each of itself is sufficient to bring about harm to another, the actor's negligence may be found to be a substantial factor in bringing it about.

*Id.* § 432. This definition of causation added a degree-of-association requirement to the cause-in-fact determination. *See Restatement Second* app. reporter's note § 433, at 129 (1966) (after the but-for test "the only remaining problem of actual causation is the determination of whether the negligent conduct played a 'substantial' part in bringing about the harm").

The reporter's note to the Restatement asserts the "substantial factor" prong of section 431(a) is limited to causation in fact. *Id.* ("[T]he 'substantial factor' element deals with causation in fact while the other element deals with a legal policy relieving the actor of liability for harm he has, as a matter of fact, caused."). The Restatement's reformulation of causation principles has, however, been soundly criticized on the basis it confuses factual determinations with policy judgments: "When [the Restatement] defines 'legal cause' in terms of 'substantial factor' it confuses not only the policies which control the determination of duties with the mere minor matter of causal relation, but it likewise confuses the functions of judge and jury." Leon Green, *The Torts Restatement,* 29 Ill.L.Rev. 582, 606 (1935); *accord* Arno C. Becht & Frank W. Miller, *The Test of Factual Causation in Negligence and Strict Liability Cases* 16 n.8, 130–34 (1961) (criticizing assertion that Restatement's substantial factor test is confined to actual causation); Wright Article at 1781–83 ("the question of limiting liability due to the *extent* of contribution, rather than due to the absence of *any* contribution, is clearly a proximate-cause issue of policy or principle, rather than an issue of actual causation (contribution to the injury)"); *see Vincent v. Fairbanks Memorial Hosp.,* 862 P.2d 847, 851 n.7 (Alaska 1993) (observing the Restatement's substantial factor test encompasses "both actual cause and policy considerations"); *see generally Collins v. American Optometric Ass'n,* 693 F.2d 636, 640 n. 4 (7th Cir.1982) (substantial factor test is a policy decision; "Except for the concurrent cause situation . . ., it is difficult to imagine a situation in which . . . conduct could be characterized as a 'substantial factor' in bringing about an event, yet the event would have occurred even absent the challenged conduct."). As one commentator has observed, in the area of toxic torts this confusion can obscure the requirement of causation in fact, resulting in a focus on "a policy decision about who should pay for damages." Black Article at 27.

Beginning in 1960, we have cited to the Restatement as the law in Iowa in several cases. *E.g., Winter v. Honeggers' & Co.,* 215 N.W.2d 316, 320 (1974); *Pedersen v. Kuhr,* 201 N.W.2d 711, 713 (Iowa 1972); *Federated Mut. Implement & Hardware Ins. Co. v. Dunkelberger,* 172 N.W.2d 137, 144 (1969),

---

3. "Legal cause" under the Restatement refers to the overall causation requirement, which encompasses both causation in fact and Prosser's proximate or legal cause.

overruled on other grounds by Lewis v. State, 256 N.W.2d 181, 189–92 (Iowa 1977); Frederick v. Goff, 251 Iowa 290, 298, 100 N.W.2d 624, 629 (1960). Our adherence to the Restatement has not, however, been consistent. For example, in State v. Marti, 290 N.W.2d 570, 585 (Iowa 1980), we defined "factual causation" as the but-for test, and then, quoting Prosser, referred to the additional necessity for "legal causation": " 'essentially a question of whether the policy of the law will extend responsibility for the conduct to the consequences which have in fact occurred.' " Marti, 290 N.W.2d at 585 (quoting Prosser § 42, at 244); see Dunlavey v. Economy Fire & Cas. Co., 526 N.W.2d 845, 853 (Iowa 1995) (following Marti's formulation of "factual causation" (an issue of fact) and "legal causation" (an issue of law)); Sumpter v. City of Moulton, 519 N.W.2d 427, 434 (Iowa App.1994) (applying Marti's but-for test to determine "actual cause" and applying Restatement test to determine "legal" or "proximate cause").

Several of our recent cases define the causation requirement solely as conduct which "is a substantial factor in producing damage and when the damage would not have happened except for the conduct." Spaur v. Owens–Corning Fiberglas Corp., 510 N.W.2d 854, 858 (Iowa 1994); accord Johnson v. Interstate Power Co., 481 N.W.2d 310, 323 (Iowa 1992) (citing Iowa Civ. Jury Instructions 700.3 (1991)). In Nachazel v. Miraco Manufacturing, 432 N.W.2d 158, 161 (Iowa 1988), we equated factual causation with the term "proximate cause" and required the two prong showing of but-for and substantial factor. In contrast, in Kelly v. Sinclair Oil Co., 476 N.W.2d 341, 349 (Iowa 1991), we said "proximate causation" is a policy question: will the law "extend responsibility to those consequences which have in fact been produced by an actor's conduct." Kelly, 476

N.W.2d at 349. In other words, the analytical framework we described in Kelly was to make the policy determination of proximate cause only after cause in fact had been established. The rule we applied in Kelly to make this policy determination was the Restatement's definition of "legal cause:" the substantial factor test and no rule of law relieving the defendant of liability. Id.

In the context of factual causation, it appears the majority of our decisions require a plaintiff to meet both the but-for test of causation, with the concurrent cause exception, and the Restatement's substantial factor requirement.[4] Whether it would be prudent to eliminate the substantial factor test as a requirement in all cases in order to clearly separate the jury's factual inquiry into causal relationship from the policy question of responsibility is not a decision we must make here. See McDowell v. Davis, 104 Ariz. 69, 448 P.2d 869, 871 (1968) (en banc) (rejecting use of substantial factor test because "it is a source of additional confusion injected into an already difficult area of law"); Young v. Flathead County, 232 Mont. 274, 757 P.2d 772, 777 (1988) (using but-for test for causation in fact and substantial factor test for those "rare circumstances" where concurrent causes would each have been sufficient to produce the same result). It is sufficient here to observe that despite the various terms used to state the causation analysis, we have consistently required a plaintiff to meet the traditional but-for test of causation in fact. We agree with the Missouri Supreme Court when it stated

"[b]ut for" is an absolute minimum for causation because it is merely causation in fact. Any attempt to find liability absent actual causation is an attempt to connect the defendant with an injury or event that the defendant had nothing to do with. Mere logic and common sense dictates that

4. Prosser notes when the substantial factor test is used in this way, it "becomes an additional barrier to liability" and "imposes a prerequisite to legal responsibility that must be satisfied even in those cases in which the 'but for' test is plainly satisfied." Prosser § 41, at 44 (Supp.1988). It is interesting to note that when the Restatement's substantial factor test was first adopted in Iowa it was perceived as expressing the law as it currently existed in Iowa rather than being an

additional requirement, as it actually was. See Frederick, 251 Iowa at 298, 100 N.W.2d at 629 ("We have used ... language quite similar to [the Restatement].... Much the same thought is expressed in many of our opinions."); see also Pedersen v. Kuhr, 201 N.W.2d 711, 713 (Iowa 1972) (although necessary to show harm would not have occurred but for defendant's negligence, must also prove negligence was a substantial factor in bringing about the harm).

there be some causal relationship between the defendant's conduct and the injury or event for which damages are sought.

*Callahan v. Cardinal Glennon Hosp.*, 863 S.W.2d 852, 860–62 (Mo.1993) (en banc). Because the Gersts cannot meet this foundational requirement, we confine our discussion of the record to the but-for test.

B. *Proof the Gersts' damages would not have occurred but for the defendants' conduct.* Although the experts agreed gasoline from the fuel delivery system on the property had contaminated the soil and groundwater, they could not identify how or when the release of gasoline occurred. The Gersts claim, however, that even if the expert testimony raises only a possibility the defendants' conduct caused the contamination, such testimony combined with other evidence is sufficient to generate a jury question. They rely on *Becker v. D & E Distributing Co.*, 247 N.W.2d 727 (Iowa 1976), and *Winter v. Honeggers' & Co.*, 215 N.W.2d 316 (Iowa 1974). In *Becker* and *Winter*, we held an expert's opinion on the possibility of a causal connection between an incident and a condition was sufficient if there was other testimony establishing the condition did not exist before the incident claimed to be the cause of the condition. These cases are of no help to the Gersts because the Gersts cannot establish the incident—the release of gasoline—occurred prior to their acquisition of the property; similarly, they cannot prove the condition—the contamination—even existed prior to their purchase of the property. Without testimony to establish *when* the contamination occurred, testimony identifying possible sources of contamination still leaves the jury to speculate on whether those sources—the fuel delivery system components—were the responsibility of the Gersts or the Marshalls and Reif Oil *at the time of the contamination.*

The Gersts' final argument is a plea for leniency in the quantum of proof required because the experts cannot, argue the Gersts, "pinpoint the exact source and the exact time of releases due in large part to limitations in scientific technology." These limitations are no reason to abandon the basic requirement that a plaintiff prove the defendant *in fact* produced the plaintiff's damages. To ignore this requirement would substitute causation in fact with a policy determination that someone should pay for the unfortunate situation in which the Gersts have found themselves, even if the fact finder must speculate on whether the paying parties actually caused the problem. As we stated earlier, whatever questions may exist with respect to the substantial factor test,[5] such questions do not affect the continued viability of the but-for requirement for causation in fact.

■ Because the record cannot support a finding the conduct of the Marshalls and Reif Oil in fact produced the contamination found on the Gersts' property, the Gersts cannot prove the causation element of their case.[6] *See Griffith v. New England Tel. & Tel. Co.*, 420 Mass. 365, 649 N.E.2d 766, 769 (1995) (reversing judgment in favor of plaintiffs because there was no evidence of when the contamination occurred: "Even if we accept, as we must, that the tanks caused the contamination, it is by no means clear that this

5. We do not mean to imply the traditional substantial-factor exception to the but-for test of causation in fact would not be available in those rare cases where both of two independent causes would be sufficient by itself to cause the resulting harm. *See Restatement Second* § 432(2). That exception simply does not apply here.

6. The causation analysis with respect to the fraudulent misrepresentation count is slightly different because the tortious conduct at issue in the fraud count is the representations made by the Marshalls at the time of sale rather than any conduct by them that actually caused a release of gasoline into the soil. Nevertheless, the fraud claim primarily rests on a finding the property was contaminated at the time of its sale to the Gersts. The Gersts argue in their brief: "there were genuine issues of material fact as to whether or not the Marshalls knew or should have known about the contamination and whether or not they made adequate disclosure to [the Gersts]." As we have already discussed, there is insufficient evidence to permit the jury to find the property was contaminated before it was purchased by the Gersts. To the extent the fraud claim is based on other nondisclosures or representations of the Marshalls, we conclude the Marshalls have shown they are entitled to judgment as a matter of law. Therefore, summary judgment was properly granted on the fraud claim.

occurred during the period of the defendant's lease."); *Fleck v. Timmons,* 374 Pa.Super. 417, 543 A.2d 148, 153 (1988) (affirming directed verdict for defendant because source and timing of leakage of gasoline from underground tank could not be established). Therefore, the district court properly granted summary judgment to the defendants.

**AFFIRMED.**