**Becky Jean BANGS and Arlan Meloy Bangs, Appellees,**

v.

**MAPLE HILLS, LTD., Appellant.**

No. 97–1176.

Supreme Court of Iowa.

Oct. 21, 1998.

Ted J. Wallace, Bettendorf, for appellant.

William Bauer of Bauer, Schulte, Hahn, Swanson & Brown, Burlington, for appellees.

McGIVERIN, Chief Justice.

Although other issues are raised, the main question here involves a district court ruling that admitted evidence of a subsequent remedial measure taken by defendant after plaintiff Becky Jean Bangs fell on defendant's property.

The court of appeals concluded that the district court erred. We agree with the district court ruling and thus vacate the court of appeals decision and affirm the district court.

## I. Background facts and proceedings.

On February 25, 1994, Becky Bangs was visiting the Maple Hills apartment complex, owned by defendant Maple Hills Ltd., in Burlington to perform home health care services for a client that lives in the complex. Becky was injured when she fell after slipping on a metal drainage grate separating two portions of the sidewalk. According to Becky, the metal grate tipped forward as she stepped on it, causing her to fall to the ground. Becky reported her fall to Richard Snider, the maintenance supervisor at Maple Hills Apartments.

Later, Becky and her husband Arlan filed a petition against defendant Maple Hills Ltd., the owner of Maple Hills Apartments, seeking to recover for Becky's injuries and asserting a loss of consortium claim. In the petition, plaintiffs alleged that defendant was negligent in failing to properly maintain the sidewalk and grate and failing to warn Becky, as an invitee, of the danger created by the defective sidewalk and grate.

Trial to a jury was held. After opening statements were completed, but before plaintiffs began presentation of their evidence, defendant moved to exclude any photographs offered by plaintiffs, showing that the grate had been welded after Becky's fall. Defendant contended that the photographs constituted evidence of a subsequent remedial measure and were therefore barred under Iowa rule of evidence 407. The court sustained defendant's motion and ruled that the photographs were inadmissible.

At trial, witnesses described the grate as a solid sheet of steel approximately one-fourth inch thick and about fifty inches across. The grate lies flush between two sections of sidewalk and spans a drainage trench or gully. The grate itself rests on a three-quarter inch lip approximately three to four inches above the ground. The purpose of the grate is to allow water to drain away from the building.

At trial, Becky testified that when she stepped onto the grate, it slipped or tipped forward causing her to fall. She further testified that although it had snowed earlier that day, there was no snow on the sidewalk when she fell. Becky also testified that she was not looking at the grate at the time she fell. She further explained that she was familiar with the sidewalk and location of the grate, having walked over the grate approximately twelve times a week for the past two to three years. During that time, she had never experienced a problem with the grate tipping forward.

Richard Snider, the maintenance supervisor at the apartment complex, testified that the grate had tilted or slipped approximately four to six times in the thirteen years he had been maintenance supervisor. He also testified that according to his knowledge, no one had ever fallen at the location of the grate

during his time as maintenance supervisor. He also stated that he had cleaned the snow from the sidewalk the morning of Becky's fall and that the grate was not tilted or otherwise defective at that time.

Linda Lozano, the manager of the apartment complex, testified that she heard that another tenant had fallen on the grate in the past.

At the close of plaintiffs' evidence and of all evidence, defendant moved for a directed verdict arguing that plaintiffs failed to introduce evidence proving that the grate was defective or that defendant had any actual or constructive notice of a problem with it. The court overruled the motion.

During closing arguments, which were not reported, plaintiffs' attorney commented to the jury that defendant could and should have welded the grate to prevent it from tipping or slipping. In response to plaintiffs' counsel's comments, defendant's attorney allegedly argued to the jury that welding the grate "would not work." At this point, a recess was taken. After hearing arguments from counsel, the court allowed plaintiffs to reopen the evidentiary record to allow them to introduce photographs showing that the grate had been welded at some time after Becky's fall.

Thereafter, Becky testified concerning photographs she took of the grate after her fall which showed that the grate had been welded. Following this testimony and admission of the photographs into evidence, the record was again closed and counsel resumed closing arguments.

The jury returned a verdict in plaintiffs' favor, finding Becky one percent at fault and defendant ninety-nine percent at fault. The jury awarded damages to both Becky and her husband and judgment was entered against defendant thereon.

Thereafter, defendant filed a motion for judgment notwithstanding the verdict and a motion for new trial. The court denied the motions. In its ruling, the court stated that plaintiffs were allowed to introduce the photographs showing the welded grate after defendant "argued it was not feasible to attach the metal grate to the channel over which it covered." The court found that this statement "tended to mislead the jury, thus the Court allowed the record to be reopened so that the jury could see that it was feasible to attach the metal grate to the channel."

Defendant appealed, asserting that the district court erred in: (1) admitting into evidence the photographs showing that defendant had welded the grate after Becky's fall; (2) overruling its motion for a directed verdict; and (3) failing to properly instruct the jury concerning the law of negligence. Upon our transfer, the court of appeals concluded that the district court erred in admitting the photographs showing the welded grate and therefore reversed and remanded the case for a new trial. Thereafter, we granted plaintiffs' application for further review.

## II. Admissibility of the photographs under Iowa rule of evidence 407.

Defendant contends that the district court erred in admitting into evidence the photographs showing the grate had been welded at a time after plaintiff Becky's fall. Defendant asserted that admission of the photographs violated Iowa rule of evidence 407.

### A. Standard of review.

We review the district court's ruling concerning admission of evidence for correction of errors at law. Iowa R.App. P. 4. "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected,...." Iowa R. Evid. 103(a). *Cf. Tucker v. Caterpillar, Inc.*, 564 N.W.2d 410, 414 (Iowa 1997) (although district court erred in applying rule 407 to exclude evidence concerning warning decal, exclusion of evidence did not affect plaintiff's substantial rights because jury could conclude from other lawfully admitted evidence that defendant was negligent). A trial court is granted a broad range of discretion concerning the admissibility of evidence. *Bingham v. Marshall & Huschart Machinery*, 485 N.W.2d 78, 80 (Iowa 1992).

### B. Analysis.

Rule 407 of the Iowa rules of evidence provides as follows:

When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered in connection with a claim based on strict liability in tort or breach of warranty or for another purpose, such as proving ownership, control, *or feasibility of precautionary measures, if controverted,* or impeachment.

(Emphasis added.) The public policy supporting the rule is "that the exclusion of such evidence may be necessary to avoid deterring individuals from making improvements or repairs after an accident." *Tucker,* 564 N.W.2d at 412–13 (quoting Iowa R. Evid. advisory committee's comment (1983)).

For purposes of addressing whether the district court properly admitted the photographs showing the welded grate, we deem it necessary to refer to relevant portions of the trial record.

The record shows that in its motion in limine, defendant argued that the photographs showing the welded grate were not admissible under rule 407. In response, plaintiffs argued that the photographs were admissible "not to prove negligence, but simply to describe a picture of the area in which the injury occurred." The court sustained defendant's motion on the basis that the photographs constituted evidence of subsequent remedial measures and thus were not admissible under rule 407. The court stated:

THE COURT: ... This might be a different situation if the Defendant puts on the defense saying that, ... Ladies and Gentlemen of the jury, there's nothing we could have done to make those grates more safe than they already were and then after the accident they welded them, which is a fairly simple remedial measure, and if the Defendant takes that approach, then I think the Plaintiff, in rebuttal, could show that, well, there was a fairly simple thing that could have been done and that was done, these grates were welded, but absent those two examples, the Court can see this

only as ... remedial measures, which are not admissible under rule 407.

During closing arguments, which were not reported, plaintiffs' attorney allegedly commented to the jury that defendant could and should have welded the grate to prevent it from tipping or slipping. In response to these comments, defendant's attorney allegedly argued to the jury that welding the grate "would not work." The following discussion was then held outside the presence of the jury:

MR. BAUER [for plaintiffs]: [C]ounsel [for defendant] in final argument tells this jury the remedial action which I suggested and that's welding the side of the grate to the L-shaped metal that's on—attached to the concrete would be a method, not the method, but a method of solving the situation of the grate being taken out, falling out, tipping, turning, whatever. [Defendant's] [c]ounsel has said ... to this jury that that would not work. Now we all know that it does work. We all know that it was done. We all know that it exists today, and I think its extremely unfair to use that approach in arguing this case.

THE COURT: Attorney Wallace, would you like to respond?

MR. WALLACE [for defendant]: Absolutely. The only reason I brought this up, Your Honor, is because Plaintiff in his closing argument suggests that we should fasten it down or weld it down. If I do not have latitude to respond to his argument, he's certainly free to argue that we're negligent in not doing so. I am simply responding to his position.

THE COURT: Defense counsel made the argument twice. If Plaintiff wishes, I'm going to allow said Plaintiff's record to be reopened and Plaintiff can allow the photographs to be into evidence. If that's what you want to do, we can do that.

Following this discussion, the evidentiary record was reopened and Becky was recalled to the stand by plaintiffs. Becky proceeded to testify about photographs that she took of the grate and sidewalk in April following her fall. These photographs showed that the grate had been welded so that it would no

longer slip or tip. Defendant again objected on the basis that rule 407 precluded admission into evidence of the photographs.

Upon our review of the record, we conclude that the district court properly admitted the photographs.

■ 1. In connection with plaintiffs' negligence claim, plaintiffs' attorney had the right to argue to the jury that defendant could have done something to prevent the grate from slipping or tipping, especially when defendant had knowledge that the grate had come out of its housing in the past.

Second, we believe that by arguing to the jury that welding the grate "would not work," defendant raised the issue concerning the feasibility of welding the grate. As a result, the photographs showing the welded grate became admissible as evidence of subsequent measures to prove the "feasibility of precautionary measures" under rule 407. In other words, the photographs were admissible for purposes of showing whether defendant could have avoided the incident by welding the grate and whether it was feasible to do so. *See* Thomas M. Fleming, Annotation, *Admissibility of Evidence of Repairs, Change of Conditions, or Precautions Taken After Accident—Modern State Cases*, 15 A.L.R.5th 119, 272 (1993) (discussing admissibility of evidence of subsequent remedial measures to show possibility or feasibility of avoiding injury). The district court believed that defense counsel's statements to the jury tended to mislead the jury. The court again stated this. belief in its ruling on post-trial motions.

Additionally, we find nothing we said in *McIntosh v. Best Western Steeplegate Inn*, 546 N.W.2d 595 (Iowa 1996), has any bearing on our analysis under the record here. In *McIntosh*, we held that the district court erred when it refused to admit photographs showing a deicing agent had been applied to its parking lot after plaintiff slipped on a patch of ice. *Id.* at 597. We concluded that plaintiffs should have been permitted to offer evidence that a deicing agent had been applied as evidence of changed conditions between the time of plaintiffs fall and the time the photographs were taken. *Id.*

In this case, the parties have never disputed the location of Becky's fall or the condition of the grate or sidewalk. Rather, the distinguishing factor in this appeal involves the controverted feasibility of the remedial measure. Thus, we believe *McIntosh* has no application to the facts of this case.

2. We also believe the reopening of the evidentiary record here during oral argument to the jury was a matter of trial court discretion with which we should not interfere. *See Sun Valley Iowa Lake Ass'n v. Anderson*, 551 N.W.2d 621, 634 (Iowa 1996); *see also* 75 Am.Jur.2d *Trial* § 390, at 586 (1991). As one authority has stated:

> No rigid or fixed formula can or should be employed to determine when a motion to reopen is proper since the trial court, which has a feel for the case, can best determine what is necessary and appropriate to achieve substantial justice.

75 Am.Jur.2d *Trial* § 386, at 583.

■ Thus, a trial court in its discretion may allow reopening of the case at any stage of the trial, including after argument has commenced, if it appears "necessary to the due administration of justice." *Id.* § 390, at 587. Such a decision will ordinarily not be interfered with by a reviewing court. *Id.* § 390, at 586. *See also State v. Jefferson*, 545 N.W.2d 248, 250 (Iowa 1996), *and State v. Teeters*, 487 N.W.2d 346, 348 (Iowa 1992) (stating factors to be considered in determining whether a case should be reopened for additional evidence).

Here, the decision whether to reopen the case was a matter of discretion with the district court which was in the best position to determine what was "necessary and appropriate to achieve substantial justice." 75 Am.Jur.2d *Trial* § 386, at 583. Specifically, the district court allowed the record to be reopened for introduction of the photographs because it felt that defense counsel's statements misled the jury. We find no abuse of discretion here.

In summary, we conclude under this record that the district court did not abuse its discretion by admitting into evidence the photographs showing that defendant welded the grate after Becky's fall.

### III. The ruling on the directed verdict motion.

Defendant also contends that the district court erred in overruling its motion for a directed verdict and motion for judgment notwithstanding the verdict based thereon.

When considering a motion for judgment notwithstanding the verdict on appeal, we view the evidence as the trial court did in ruling on the motion, that is, in the light most favorable to the party against whom the motion was directed. *Faught v. Budlong*, 540 N.W.2d 33, 35 (Iowa 1995) (citations omitted).

Iowa Rule of Civil Procedure 243(b) (1996) provides:

> If the movant was entitled to have a verdict directed for him at the close of all the evidence, and moved therefor, and the jury did not return such verdict, the court may then either grant a new trial or enter judgment as though it had directed a verdict for the movant.

The purpose of rule 243(b) is to afford the trial court an opportunity to correct its error in failing to sustain a motion for directed verdict where the movant was entitled to a directed verdict at the close of all evidence. *Meeker v. City of Clinton*, 259 N.W.2d 822, 827 (Iowa 1977).

A motion for judgment notwithstanding the verdict should be denied if there is substantial evidence to support the claim. *Faught*, 540 N.W.2d at 35 (citations omitted). Conversely, absent such evidence, judgment notwithstanding the verdict may be sustained. *Id.* "Evidence is substantial when a reasonable mind would accept it as adequate to reach a conclusion." *Johnson v. Dodgen*, 451 N.W.2d 168, 171 (Iowa 1990).

Based upon our review of the record, we conclude that plaintiffs presented sufficient evidence showing that defendant was aware of the condition of the grate to justify submitting the case to the jury. For instance, plaintiffs presented evidence that the grate had slipped or tipped forward in the past and that at least one person had fallen on the grate. This evidence was sufficient to generate a fact question on plaintiffs' claim that the sidewalk and grate were defective and that defendant had knowledge thereof.

We thus conclude that the district court properly overruled defendant's motion for a directed verdict and motion for judgment notwithstanding the verdict.

### IV. Jury instructions.

Defendant also asserts that the district court erred in instructing the jury. Defendant says that one instruction involved a duplicative specification of negligence and that its three requested instructions should have been given. We determine the court's jury instructions adequately explained the applicable law. No reversible error appears here.

### V. Disposition.

We conclude that under this record the district court properly admitted photographs showing subsequent remedial measures taken by defendant after plaintiff Becky Bangs' fall on defendant's grate and sidewalk. We also conclude that the district court properly overruled defendant's motion for directed verdict and motion for judgment notwithstanding the verdict. Finally, we find no error concerning the jury instructions given to the jury. Accordingly, we vacate the decision of the court of appeals and affirm the judgment of the district court.

**DECISION OF THE COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

All justices concur except NEUMAN, J., who dissents and is joined by LAVORATO and TERNUS, JJ.

CADY, J., takes no part.

NEUMAN, Justice (dissenting).

I respectfully dissent.

It is one thing to permit introduction of proof countering evidence in the record; it is quite another to reopen the record for purposes of countering counsel's *argument*. Juries are routinely instructed that "statements, arguments, questions, and comments" by lawyers are *not* evidence. Iowa Civ. Jury

Instr., Model Instr. No. 4. Compounding the error here, the idea of reopening the record came from the court, not counsel. Plaintiff's counsel, eager to avoid a retrial, merely urged that "[defense] counsel should be admonished about this, and ... required to withdraw those statements and correct the record."

Perhaps more importantly, the majority—like the district court—has mischaracterized the dispute as one over the feasibility of welding the grate. Defendant was not contesting the *feasibility* of welding the grate to prevent it from slipping or tipping; the grate obviously was capable of being welded down. Plaintiff's argument merely sought to explain that welding "would not work" because it would destroy the grate's functionality—removal to allow for cleaning of collected debris. The drain was *designed* to allow the grate to be removed for this purpose.

In product liability cases, a number of courts have held that discussing or arguing the tradeoffs involved in taking precautionary measures does not implicate the feasibility exception to rule 407. *See Gauthier v. AMF, Inc.*, 788 F.2d 634, 638 (9th Cir.1986); *Flaminio v. Honda Motor Co.*, 733 F.2d 463, 468 (7th Cir.1984); *Bush v. Michelin Tire Corp.*, 963 F.Supp. 1436, 1450 (W.D.Ky.1996). If it did, the "feasibility" exception to rule 407 would swallow the rule. *Bush*, 963 F.Supp. at 1450. "Feasibility" under rule 407 merely refers to mechanical or technological obstacles in connection with the allegedly defective instrumentality, and the defendants ability to overcome them. *See id.* This, of course, was never an issue in the case before us. Thus the feasibility exception to rule 407 arguably had no application. *See Mills v. Beech Aircraft Corp.*, 886 F.2d 758, 763–64 (5th Cir.1989).

Whether the welding amounted to inadmissible proof of remedial conduct or admissible proof of feasibility of precautionary measures, the court's ruling—right or wrong—was properly made on the evidentiary record. Revisiting the issue during closing argument unnecessarily emphasized the corrective measures and made defense counsel appear a liar. Upon objection by opposing counsel, the court should have simply cautioned the jury to disregard defense counsel's assertion. What transpired instead was a highly unusual scenario, unfairly prejudicial to the defendant, which our court of appeals rightly recognized as compelling a new trial. I would affirm the judgment of the court of appeals, thereby reversing the district court.

LAVORATO and TERNUS, JJ., join this dissent.