Dennis HASSELMAN, Appellant,

v.

Homer HASSELMAN and Doug Hasselman, Individually and d/b/a D & H Farms Partnership, Appellees.

No. 97–1637.

Supreme Court of Iowa.

July 8, 1999.

James Q. Blomgren of Pothoven, Blomgren & Stravers, Oskaloosa, until his withdrawal, and then Robert K. Clements and Joel D. Yates of Clements Law Firm, Oskaloosa, for appellant.

Harry Perkins III and Patrick J. Waldron of Patterson, Lorentzen, Duffield, Timmons, Irish, Becker & Ordway, L.L.P., Des Moines, for appellees.

Considered by McGIVERIN, C.J., and LARSON, CARTER, SNELL, and TERNUS, JJ.

TERNUS, Justice.

The appellant, Dennis Hasselman, sued the appellees, Homer Hasselman and Doug Hasselman, claiming their negligence resulted in personal injuries to him. On appeal, Dennis challenges the court's order directing a verdict in favor of the defendants. He claims the trial court had no authority to direct a verdict after the jury was unable to reach a decision and the court had already declared a mistrial. Dennis also asserts the trial court erred in concluding that the evidence was insufficient to submit his claim to the jury. We affirm for two reasons: (1) the trial court had the power under Iowa Rule of Civil Procedure 243 to direct a verdict after having declared a mistrial; and (2) there was insufficient evidence to support a find-

ing that any negligence of the defendants was a proximate cause of the plaintiff's injuries.

## I. *Background Facts and Proceedings.*

Because this appeal is taken from the trial court's ruling on a motion for directed verdict, we view the evidence "in the light most favorable to the party against whom the motion was directed," in this case, the appellant. *Bangs v. Maple Hills, Ltd.*, 585 N.W.2d 262, 268 (Iowa 1998). Viewed in this light, the evidence introduced at trial would support the jury finding the following facts.

In the summer of 1992, Dennis, his brother, Doug, and their father, Homer, were working together to salvage materials from an old commercial building that was being torn down. On the day of the accident, Dennis and Doug were removing structural steel from the roof. Dennis asked Doug to place a ladder up against the building so Dennis could remove the bolts holding the rafters to the steel beams. Doug did so and Dennis then ascended the ladder. As Dennis reached the top, the ladder telescoped down. Dennis fell and severely fractured his left tibia.

Dennis brought this suit against Doug and Homer, claiming that he had been "engaged" by them, individually and as a partnership, to assist in the removal of scrap materials from the building. Dennis claimed Doug was negligent in his placement of the ladder in an unsafe manner or condition, thereby causing Dennis' injuries.

The case was tried to a jury. Although the district court expressed doubts about the sufficiency of the plaintiff's evidence, the court overruled the defendants' motions for directed verdict made upon the completion of the plaintiff's case and at the close of all the evidence. After deliberating for several hours, the jury informed the court that it was deadlocked and could not reach a verdict. The trial court declared a mistrial and dismissed the jury.

Four days later the defendants renewed their motion for directed verdict. The court granted the motion on several bases, one being that the evidence was insufficient to establish proximate cause. The plaintiff appealed.

## II. *Power of the Court to Direct a Verdict After a Mistrial.*

■ A. *Scope of review.* This issue turns on an interpretation of the relevant rules of civil procedure. Our review, therefore, is for correction of errors of law. *See Neill v. Western Inns, Inc.*, 595 N.W.2d 121, 123 (Iowa 1999).

■ B. *Discussion.* The plaintiff relies on Iowa Rule of Civil Procedure 200 to support his argument that the court has no authority to direct a verdict after the jury has been discharged. Rule 200 states that "[t]he court may discharge a jury ... if they have deliberated until it satisfactorily appears that they cannot agree. *The case shall be retried immediately or at a future time*, as the court directs." Iowa R. Civ. P. 200 (emphasis added).[1] The plaintiff argues that rule 200 requires the court to order a case to be retried whenever a mistrial is declared. He cites two Iowa cases in support of his argument: *Harden v. Illinois Central Railroad*, 254 Iowa 426, 118 N.W.2d 76 (1962) and *Mid–Country Meats, Inc. v. Woodruff–Evans Construction*, 334 N.W.2d 332 (Iowa App.1983). We think the plaintiff's position ignores the interplay between rule 200 and Iowa Rule of Civil Procedure 243. Moreover, the cited cases do not support the proposition that retrial is mandatory after a mistrial.

Initially we note that the very action the plaintiff contends the trial court was without authority to do is explicitly allowed under rule 243, which states:

> Any party may, on motion, have judgment in his favor despite an adverse

---

1. All references are to the 1998 rules of civil procedure.

verdict, *or the jury's failure to return any verdict*:

. . . .

**(b)** If the movant was entitled to have a verdict directed for him at the close of all the evidence, and moved therefor, and the jury did not return such verdict, the court may then *either* grant a new trial or *enter judgment as though it had directed a verdict for the movant.*

Iowa R. Civ. P. 243(b) (emphasis added). This rule clearly addresses the situation in which the jury has failed to return a verdict, and clearly authorizes the court to direct a verdict in that situation.

This result is consistent with the purpose of rule 243, namely, "to afford the trial court an opportunity to correct its error in failing to sustain a motion for directed verdict where the movant was entitled to a directed verdict at the close of all evidence and moved therefor and the jury did not return such verdict." *Bangs,* 585 N.W.2d at 268. It would be illogical to conclude that a trial court is not authorized to reconsider whether a defendant is entitled to a directed verdict under circumstances in which the jury could not reach a verdict, yet may reconsider this question when a jury unanimously finds in favor of the plaintiff. We also note that federal courts interpreting a comparable federal rule of civil procedure have given the federal rule the same meaning we give rule 243. *E.g., Powell v. Havner,* 817 F.Supp. 90, 92 (D.Kan.1993) ("The court retains the power, upon proper and timely motion, to have judgment entered in accordance with a party's motion for judgment as a matter of law even if a verdict was not returned by the jury after prolonged deliberations."); *Stokes v. Children's Hosp., Inc.,* 805 F.Supp. 79, 81 (D.D.C.1992) (holding plaintiff's argument that court lacked jurisdiction to consider defendant's motion for directed verdict after mistrial was without merit when the applicable federal rule "clearly states that '*if no verdict was returned,* the court may . . . direct the entry of judgment as a matter of law' " (quoting Fed.R.Civ.P. 50(b))).

We also think our interpretation of rule 243 results in no conflict with rule 200. Rule 243 permits the court to grant a directed verdict under appropriate circumstances, even when the jury has failed to reach a verdict. If a directed verdict is not warranted, then rule 200 directs the court to set a new date for trial. Under this reading of the rules, rule 243 and rule 200 have a logical interplay and both are given meaning. *Cf. State v. Ceron,* 573 N.W.2d 587, 590 (Iowa 1997) ("When more than one statute is relevant, we consider the statutes together and attempt to harmonize them.").

Additionally, this interpretation of the rules is consistent with our prior cases. The *Harden* case, upon which the plaintiff relies, is not on point. In that case, the trial court denied the defendant's motion for directed verdict, renewed after the jury had been dismissed, and ordered a new trial. *Harden,* 254 Iowa at 428, 118 N.W.2d at 77. In considering the defendant's subsequent appeal, this court held that the appeal was interlocutory because the district court's ruling denying a directed verdict and ordering a new trial was not a final adjudication. *Id.* at 429, 118 N.W.2d at 77. In the course of our discussion of this issue, we stated that "[i]t was the mandatory duty of the trial court to retry this case without undue delay." *Id.* When considered in context, this statement did not mean that in *every* case the only option upon mistrial was the ordering of a new trial. Rather, in the context of *Harden,* in which the defendant's motion for directed verdict had been overruled, the court's only remaining alternative was to order a retrial. Thus, the holding and discussion in *Harden* is entirely consistent with the interpretation of rules 243 and 200 we have applied in the case before us.

We also find no conflict with the court of appeals decision in the *Mid–Country Meats* case. In *Mid–Country Meats,* the trial court directed a verdict for the defen-

dant after the jury had failed to return a verdict. 334 N.W.2d at 334. On appeal, the court of appeals reversed the trial court, not because the trial court lacked authority to direct a verdict under rule 243, but rather because the appellate court disagreed with the trial court as to the merits of the defendant's motion for directed verdict. *Id.* at 335. The court of appeals concluded the evidence was sufficient to submit the case to another jury, and therefore, *under the record in that case,* the appropriate action was an order for new trial. *Id.* Thus, the *Mid–Country Meats* case does not stand for the proposition that a mistrial always requires a retrial. To the contrary, it demonstrates the relationship between rules 200 and 243. When a directed verdict is appropriate, the court may direct a verdict upon a motion to reconsider made after a mistrial. *See* Iowa R. Civ. P. 243. On the other hand, when the moving party is not entitled to a directed verdict, a mistrial requires a new trial. *See* Iowa R. Civ. P. 200.

In conclusion, rule 243 gives the trial court the authority to direct a verdict after the jury has been unable to reach a verdict. Therefore, the trial court here had the power to rule on the merits of the defendants' motion to reconsider their prior motion for a directed verdict, despite the fact that the court had declared a mistrial.

III. *Correctness of Court's Order Directing a Verdict in Favor of the Defendants.*

■ A. *Standard of review.* We review the trial court's decision to direct a verdict for the correction of errors of law. *See Tomka v. Hoechst Celanese Corp.,* 528 N.W.2d 103, 106 (Iowa 1995). A defendant's motion for directed verdict should be denied if there is substantial evidence to support the plaintiff's claim. *See Bangs,* 585 N.W.2d at 268. "Evidence is substantial when a reasonable mind would accept it as adequate to reach a conclusion." *Johnson v. Dodgen,* 451 N.W.2d

168, 171 (Iowa 1990). Thus, we must decide whether the trial court correctly determined that there was insufficient evidence to submit the issue of proximate cause to the jury.

■ B. *Sufficiency of evidence of proximate cause.* Dennis' claim against his father and brother was based on negligence. In order to recover on a claim of negligence, the plaintiff must establish that the defendant's conduct was a proximate cause of the plaintiff's injury or damage. *See Hartig v. Francois,* 562 N.W.2d 427, 429 (Iowa 1997) (including "proximate cause" as an element of a negligence claim); *Blackhawk Bldg. Sys., Ltd. v. Law Firm of Aspelmeier, Fisch, Power, Warner & Engberg,* 428 N.W.2d 288, 290 (Iowa 1988) ("Even though negligence has been established, proximate cause must be determined separately."); *Bickford v. American Interinsurance Exch.,* 224 N.W.2d 450, 455–56 (Iowa 1974) (stating negligence is actionable only if it is a proximate cause of injury).

■ The element of proximate cause has two components: (1) "the defendant's conduct must have in fact caused the plaintiff's damages," and (2) "[t]he policy of the law must require the defendant to be legally responsible for the injury." *Gerst v. Marshall,* 549 N.W.2d 810, 815 (Iowa 1996). Our focus in the present case is on the first component, commonly known as causation in fact. *See id.* To prove causation in fact, the plaintiff must at a minimum establish that, but for the defendant's negligence, the plaintiff's injury would not have occurred. *See id.* at 815, 817. In other words, " 'there must be some causal relationship between the defendant's conduct and the injury or event for which damages are sought.' " *Id.* at 818 (quoting *Callahan v. Cardinal Glennon Hosp.,* 863 S.W.2d 852, 862 (Mo.1993) (en banc)).

Before reviewing the evidence of causation, it is helpful to note the specifications of negligence that were claimed to have caused the plaintiff's injury. The defen-

dants' alleged negligence took two forms: (1) Doug's failure "to extend the ladder to the proper height with the extension ladder properly seated," and (2) Doug's placement of the ladder "in such a position and such a manner that it was unsafe to climb." We now summarize the evidence that arguably supports the plaintiff's claim that these negligent acts caused his injuries.

The ladder from which Dennis fell was at the demolition site when the Hasselmans began their salvage work. No one knew its prior history, and it could not be located for examination after the accident. The ladder was an extension ladder that was secured in an extended position by latches or C-shaped clamps that fit over the rungs. Dennis testified that although he did not visually examine the clamps prior to ascending the ladder, he believed he would have noticed if they were not properly secured because the rungs of the ladder would not have been aligned. He further testified that had he noticed that the clamps were not in proper position, he would not have proceeded up the ladder. No other witness had any information with respect to the position or condition of the clamps on the ladder or the ladder itself.

Dennis recalled that the ladder "went down vertically" when he fell. From this evidence, he concludes that the clamps failed. The deficiency in this inference is that it still leaves the jury to speculate on the cause of this failure. There is no evidence that the clamps failed because Doug did not properly secure them. It is just as likely under the evidence presented to the jury that they failed because some component of the clamp mechanism was worn and gave out. When a jury is left to speculate on whether the defendant's conduct in fact caused the plaintiff's damages, the evidence is insufficient to support a finding of proximate cause. See Gerst, 549 N.W.2d at 818–19 (holding district court properly granted summary judgment to the defendants when plaintiffs' evidence required the jury

to speculate as to whether the plaintiffs' damages would not have occurred but for the defendants' conduct); Blackhawk Bldg. Sys., 428 N.W.2d at 291 ("A jury cannot be left to speculate, but rather, must be provided with facts affording a reasonable basis for ascertaining the loss."). We conclude, therefore, that the evidence in this case is insufficient to support a finding of proximate cause with respect to the defendants' alleged negligence in failing to properly extend and seat the ladder.

The same conclusion is warranted with respect to the plaintiff's allegation that Doug placed the ladder in an unsafe position. There was no testimony or circumstances that indicated the ladder fell because of the position in which it was placed. Therefore, the jury was left to speculate on whether anything the defendants did with respect to the placement of the ladder caused it to move and fall.

In summary, after reviewing the evidence produced at trial on the issue of causation, we concur in the trial court's conclusion that the evidence was insufficient to support a finding that but for any negligence of the defendants the plaintiff's injury would not have occurred. Therefore, the trial court did not err in directing a verdict for the defendants in this case.

**AFFIRMED.**