# IN THE SUPREME COURT OF IOWA

No. 136 / 05-1112

Filed January 26, 2007

**AG PARTNERS, L.L.C.**,

      Appellee,

vs.

**CHICAGO CENTRAL & PACIFIC
RAILROAD COMPANY, d/b/a
CANADIAN NATIONAL/ILLINOIS
CENTRAL RAILROAD**,

      Appellant.

_____

On review from the Iowa Court of Appeals.


Appeal from the Iowa District Court for Pocahontas County, Joel Swanson, Judge.


Further review from a decision by the court of appeals affirming in part and reversing in part a district court judgment for damages to a grain elevator facility. **DECISION OF COURT OF APPEALS AFFIRMED IN PART, VACATED IN PART, AND CASE REMANDED TO THE DISTRICT COURT FOR FURTHER PROCEEDINGS.**


Edward J. Krug of Krug Law Firm, P.L.C., Cedar Rapids, for appellant.


Tony R. Krall of Hanson, Lulic & Krall, L.L.C., Minneapolis, Minnesota, and Robert W. Brinton of Brinton, Bordwell & Johnson, Clarion, for appellee.

**CADY, Justice.**

In this appeal from a judgment for damages based on a claim for negligence, we must decide if the district court properly overruled a motion for directed verdict on a claim for the costs of repair to damaged property predicated on stipulated evidence of the parties. We find the district court should have granted the motion for directed verdict, but not without further considering Ag Partners' request to reopen the evidence. As a result, we remand the case for a new trial conditioned on a finding by the district court the trial record should be reopened to permit the introduction of additional evidence of damage. We affirm the decision of the court of appeals in part, vacate in part, and remand the case to the district court for a conditional new trial.

## I.    Background Facts and Proceedings.

In January of 2001, two empty grain cars owned by Chicago Central & Pacific Railroad (CCP) derailed at Ag Partners' elevator facility in Fonda, Iowa. The derailed cars struck the steel supports of a grain loading structure, called a "loadout tower," located adjacent to the train tracks. The loadout tower is an essential component of an elevator operation because it permits the grain from the elevator to be loaded onto the train cars. The accident caused damage to the loadout tower and to a conveyer used in the loading operation.[1] Ag Partners had rebuilt parts of the grain loading structure a year prior to the accident to upgrade its operation and improve its business. Following the accident, Ag Partners rebuilt the loadout a second time and sued CCP in January of 2003 for the losses it incurred. These losses included the cost of repairing the

---

[1]We will refer to the damaged loadout and conveyer as the "loadout."

loadout, and trucking expenses for transporting the remaining grain to another elevator.

Ag Partners alleged negligence and trespass as theories of recovery in its lawsuit. CCP denied the claims and raised affirmative defenses, including contract and license defenses that could relieve CCP of liability. CCP also claimed Ag Partners violated the terms of a lease. The parties agreed to bifurcate the trial to hear the defenses separately. As a result, a jury trial was held on the negligence claim in 2004, and the contractual defenses were tried to the court in 2005.

Prior to the jury trial, the parties stipulated to the repair and trucking costs. The stipulation between the parties stated:

> That the fair and reasonable cost to repair the damages to the loadout and conveyer caused by the derailment of 1/14/01 is $290,176.00.
> That the fair and reasonable cost for trucking services [to] transport grain from Fonda to Albert City after the derailment of 1/14/01 was $62,481.51. Defendant does not agree that these charges were necessary or incurred because of the derailment.
> Defendant continues to deny that it was negligent in causing the derailment or that it is responsible for these damages.

Ag Partners' attorney read this stipulation at trial as part of its evidence.

At the close of all the evidence, counsel for CCP made a motion for a directed verdict. It claimed Ag Partners failed to prove "the value of the loadout so as to compare the cost of repairing the loadout." CCP asserted proof of the value of the property repaired is a separate component to the recovery of damages based on the cost of repair, and the stipulation did not cover the value of the property.[2]

---

[2]CCP did not alert Ag Partners of its objections to the sufficiency of the stipulation of damages to support an award of damages based on the cost of repairs until the motion for directed verdict. This motion was not made until the close of all the evidence at trial pursuant to an agreement by the parties the motion would be "deemed

Ag Partners responded by claiming the stipulation was sufficient to establish its claim for damages. Alternatively, Ag Partners sought to reopen its evidence to submit evidence of value. Counsel for Ag Partners stated:

> I think the costs of repair for a brand new loadout and conveyer system that was done approximately one year earlier, which is the testimony, under Iowa law is sufficient. If this was an issue it certainly could have been raised much earlier. The stipulation is more than just it was fair and reasonable, it was fair and reasonable and caused by the derailment and I think we've met our burden of proof and if there is any consideration I would simply then ask to reopen, I'll come bring Bill Lyster back and he can put it into evidence.

The trial court held the stipulation of the fair and reasonable costs of repair did not require further evidence that the value of the property prior to the repairs exceeded the cost of the repairs. The trial court considered the "fair and reasonable" language of the stipulation to mean the parties agreed it was reasonable to make the repairs. Consequently, the trial court overruled the motion for directed verdict, and did not further address Ag Partners' request to reopen the record to present evidence of the value of the property prior to the accident.

The jury subsequently returned a verdict finding both parties at fault. It determined CCP was seventy percent at fault and Ag Partners was thirty percent at fault. It also found Ag Partners suffered $352,657.51 in total damages. This total was the sum of the stipulated figures for damages to the loadout ($290,176.00), and damages for trucking costs ($62,481.51).

_____

as having been made at the close of the plaintiff's case." Until that time, Ag Partners, as well as the trial court, assumed the stipulation of damages was sufficient to support an award of damages. In fact, the trial court instructed the jury to use the stipulated amount of the repair cost in determining damages for the repairs to the loadout without objection by CCP.

After the negligence trial the parties presented their contractual arguments and other defenses to the court in a second proceeding. The court found CCP failed to establish its defenses. As a result, the district court entered judgment in favor of Ag Partners. It awarded Ag Partners seventy percent of $352,657.51, or $246,860.25.

CCP appealed. It claimed the trial court erred by rejecting its contract and license defenses, as well as its claim that Ag Partners violated the terms of a lease. It also claimed the trial court erred in denying an application for leave to file a counterclaim. Finally, CCP claimed the trial court committed error during the course of the negligence trial by allowing evidence of a subsequent remedial measure by CCP following the derailment, and by failing to direct a verdict in its favor on the claim for repair costs in the absence of evidence of the value of the property. We transferred the case to the court of appeals.

The court of appeals rejected all the claims raised by CCP except one. It found the district court erred by failing to direct a verdict on the claim for the repair costs because Ag Partners had not produced sufficient evidence to show the pre-accident value of the property. Consequently, the court of appeals affirmed the judgment entered by the district court for the trucking costs but reversed the judgment for the repair costs.

We granted Ag Partners' application for further review of the decision by the court of appeals that reversed the judgment on Ag Partners' claim for repair costs. CCP did not seek further review.

## II. Issues for Review.

"On further review, we can review any or all of the issues raised on appeal or limit our review to just those issues brought to our attention by

the application for further review." *Anderson v. State*, 692 N.W.2d 360, 363 (Iowa 2005). Only Ag Partners seeks review from the decision of the court of appeals. Moreover, its request for review is limited to the claim involving damages based on the cost to repair the loadout. The court of appeals otherwise affirmed the judgment for Ag Partners, and CCP did not request further review of the other issues adversely decided by the court of appeals relating to the judgment. Consequently, we limit our review to the issue and arguments raised by Ag Partners. In support of its application, Ag Partners makes the following arguments: (1) the district court properly denied CCP's motion for a directed verdict, (2) even if such a decision was error, reversal was not warranted because any error was harmless, and (3) even if such a decision was error and not harmless, the case should be remanded for a new trial on the issue of damages to the loadout under Iowa Rule of Appellate Procedure 6.26 and our case law.

### III. Standard of Review.

"We review the denial of a motion for directed verdict for errors at law." *Rife v. D.T. Corner, Inc.*, 641 N.W.2d 761, 766 (Iowa 2002) (citing *McClure v. Walgreen Co.*, 613 N.W.2d 225, 230 (Iowa 2000)). The court must view the evidence in the light most favorable to the non-moving party when ruling on a motion for a directed verdict. *Id.* The court must overrule the motion if each element of the claim is supported by substantial evidence in the record. *Id.* Substantial evidence is "evidence that a 'reasonable mind would accept as adequate to reach a conclusion.'" *Bellville v. Farm Bureau Mut. Ins. Co.*, 702 N.W.2d 468, 473 (Iowa 2005) (quoting *Thompson v. U.S. Fid. & Guar. Co.*, 559 N.W.2d 288, 290–91 (Iowa 1997)). Such evidence may still be adequate even if it

is contradicted, *Reuter v. State Farm Mut. Auto. Ins. Co.*, 469 N.W.2d 250, 251 (Iowa 1991), or "if reasonable minds could deduce different inferences from the evidence presented," *Rife*, 641 N.W.2d at 767.

## IV. Discussion.

It is a general rule of Iowa law that damage for repairs to property is the fair and reasonable cost of repair "not to exceed the value of the property immediately prior to the loss or damage." *State v. Urbanek*, 177 N.W.2d 14, 16 (Iowa 1970). The rationale for this general rule is traced to the fundamental purpose of damages " 'to place the injured party in as favorable a position as though no wrong had been committed.' " *Hendricks v. Great Plains Supply Co.*, 609 N.W.2d 486, 494 (Iowa 2000) (quoting *Dealers Hobby, Inc. v. Marie Ann Linn Realty Co.*, 255 N.W.2d 131, 134 (Iowa 1977)). If the cost of repairs were recoverable when it exceeds the value of the property, then the plaintiff could be placed in a better position. *See Dealers Hobby*, 255 N.W.2d at 134 (alluding that a plaintiff could be placed in a better position when the cost of repairs exceeded the value of the property because the plaintiff's damages would not be "limited to its actual loss" (citing *DeWaay v. Muhr*, 160 N.W.2d 454, 459 (Iowa 1968))); *Urbanek*, 177 N.W.2d at 16–17 (noting our rules regarding damages should not allow a plaintiff to have property restored to a better condition than before the accident).

In order for a plaintiff to recover damages for repair costs, the general rule requires the plaintiff to prove the fair and reasonable value of repair costs do not exceed the value of the property prior to the accident.[3] This general rule imposes two elements of proof that normally

---

[3]In determining the pre-accident value of property under the cost-of-repair rule, we recognize "the sum [of] all . . . the parts" is the proper measure. *See Hendricks*, 609 N.W.2d at 495. Thus, the "property" in this case would include all the integral parts,

must be met as a prerequisite to recovery. *Urbanek*, 177 N.W.2d at 16–17. It requires the plaintiff to prove both the fair and reasonable costs of repair, and the pre-accident value of the property. If the fair and reasonable repair costs are less than the value of the property prior to the accident, such costs are included in the plaintiff's damage award. If such repair costs exceed the pre-accident value of the property, the damages awarded for repair costs are limited to that value. In both cases, of course, a plaintiff may recover a total damage award greater than the pre-accident value of the property when "special items of damages" have been suffered by the plaintiff. *Schiltz v. Cullen-Schiltz & Assocs., Inc.,* 228 N.W.2d 10, 20–21 (Iowa 1975) ("The plaintiffs were entitled to recover this clean up cost as an element of damages separate from the replacement cost of rebuilding their home.").

In this case, the stipulation was limited to the fair and reasonable cost of repairing the loadout. Thus, it was an agreement by the parties the $290,176.00 in repair costs was not unreasonable or excessive. *See Hendricks*, 609 N.W.2d at 495 (noting "there was no evidence indicating the replacement costs were excessive"). However, the stipulation did not further address the second component concerning the value of the property prior to the accident, and it cannot be read to include an agreement that the repairs were less than the value of the property prior to the accident.[4]

_____

whether damaged or not, pertaining to the damaged loadout tower and conveyer, or what we have referred to as the "loadout." *See id.* ("[W]e use the value of the home in its entirety . . . .").

[4]It should be noted the fair and reasonable costs of repair, even though "fair and reasonable," can sometimes exceed the pre-accident value of the property. Thus, we reject Ag Partners' contention "fair and reasonable" meant it did not exceed the pre-accident value of the property.

In *Urbanek*, we made it clear that both components of cost to repair damages were necessary to recover. 177 N.W.2d at 18. In that case, the plaintiff only introduced evidence at trial the temporary repairs to the damaged property were "fair and reasonable." *Id.* at 15. We rejected this evidence as sufficient to support an award of damages because there was no further evidence "that the value of the [property] prior to the accident measured by any standard was greater than the demonstrated cost of repair." *Id.* at 18. We concluded the evidence "fell short of the requirements to meet any of the recognized tests as to the measure of damages." *Id.*

The stipulation in this case failed to address the pre-accident value of the property. Moreover, the other evidence presented during the negligence trial failed to establish the value of the property prior to the accident, and no exceptions to the general rule were asserted or established by the evidence.[5] Accordingly, we agree with the court of appeals that Ag Partners failed to meet its burden to submit sufficient evidence of damages for the cost of repairs to be submitted to the jury.

Ag Partners responds that any trial court error was harmless because it introduced ample evidence of the pre-accident value of the property at the second trial. We recognize error committed by a trial

---

[5]In *Urbanek*, we discussed the type of evidence that can be introduced to help establish the value of property in those cases where the value may be difficult to establish. 177 N.W.2d at 18 (noting " 'wide latitude in the evidence is permissible' " to establish actual or intrinsic value when no market value is readily available (citation omitted)). Ag Partners only introduced evidence the loadout had been updated a year prior to the accident, and the project took several months to complete. Furthermore, Ag Partners did not assert other means to satisfy the value component. *See id.* at 15–16 (noting "[t]here was no proof . . . offered that the repairs made merely restored the property to its former condition immediately before the accident[,]" and "if appellee was unable to prove either market value or actual value, it was required to show at least the repairs did not restore the property to a better condition than it was before the accident").

court in overruling a motion for directed verdict made at the close of a plaintiff's case-in-chief can be cured by introducing additional evidence to support submission of the issue to the jury prior to the close of all the evidence in the case. *See Pressley v. Stone*, 214 Iowa 449, 450–51, 239 N.W. 567, 568 (1931) (finding the district court erred in overruling the defendant's motion for directed verdict at the close of plaintiff's case, but holding "[i]f the trial court was right in its final ruling on the merits of the case, it became quite immaterial whether the court was right in its first ruling or not"); *Cushman v. Carbondale Fuel Co.*, 116 Iowa 618, 622, 88 N.W. 817, 818 (1902) ("If plaintiff, by proper evidence, makes a good case, we are not going to send it back for a new trial because it was vulnerable to objection when he first submitted it."). Yet, this rule still ensures the fact finder's verdict will ultimately be based upon adequate evidence. However, if we were to apply this rule in this bifurcated case, it would deprive a defendant of the right to have a jury decide the disputed issue. For this reason, we reject the extension of the rule as argued by Ag Partners.

We also reject Ag Partners' argument that Iowa Rule of Appellate Procedure 6.26 requires this case to be remanded.[6] This rule applies only when "the granting of the motion would have terminated the case in favor of the appellant." Iowa R. App. P. 6.26. Here, the case would not

---

[6]Iowa Rule of Appellate Procedure 6.26 provides in relevant part:

> When a judgment is reversed for error in overruling a motion for directed verdict, . . . and the granting of the motion would have terminated the case in favor of appellant, the appellate court may enter or direct the district court to enter final judgment as if such motion had been initially sustained; provided that if it appears from the record that the material facts relating thereto were not fully developed at the trial or if in the opinion of the appellate court the ends of justice will be served thereby, a new trial shall be awarded of such issue or of the whole case.

have terminated in favor of CCP because the motion for directed verdict only related to Ag Partners' claim for loadout damages. Ag Partners still would have recovered damages for its trucking expenses.

Ultimately, we agree with the court of appeals that Ag Partners failed to establish proof of the pre-accident value of the structure. However, we disagree that the remedy on appeal is to dismiss the damage claim, and we therefore vacate the decision made by our court of appeals to enter judgment in favor of CCP regarding the loadout damages. When a party has failed to introduce sufficient evidence at trial on an element of a claim as revealed by a motion for directed verdict made by an opposing party at the close of the evidence, the district court has discretion to grant a motion by a party to reopen its case to supply the missing evidence. *Bangs v. Maple Hills Ltd.*, 585 N.W.2d 262, 267 (Iowa 1998). A request to reopen the case will be granted when necessary for " 'the due administration of justice.' " *Id.* (quoting 75 Am. Jur. 2d *Trial* § 390, at 587 (1991)). This rule recognizes a trial is about the search for truth and justice. *See id.* (recognizing the decision to reopen a case is to " 'achieve substantial justice' " (quoting 75 Am. Jur. 2d *Trial* § 390, at 583)). Nonprejudicial errors, oversights, or incorrect assumptions by the court or counsel during the trial process should not interfere with that mission.

In this case, the district court never had an opportunity to exercise its discretion to permit Ag Partners to reopen its case because it incorrectly found the stipulation was legally sufficient. Thus, the effect of a dismissal of the claim for repairs on appeal based upon the incorrect ruling by the trial court would be to direct the verdict without permitting the trial court to further consider the request by Ag Partners to submit

additional evidence. A party should not have a claim dismissed for insufficient evidence without the court ruling on the party's request to reopen the case. Accordingly, we conclude the claim for repair costs should be remanded to the district court to determine if Ag Partners' request to reopen should be granted in light of our law regarding such a decision. *See id.* (" 'No rigid or fixed formula can or should be employed to determine when a motion to reopen is proper since the trial court, which has a feel for the case, can best determine what is necessary and appropriate to achieve substantial justice.' " (quoting 75 Am. Jur. 2d *Trial* § 386, at 583)); *State v. Teeters*, 487 N.W.2d 346, 349 (Iowa 1992) (listing factors to weigh when deciding whether to reopen).[7]

In considering the scope of the remand, we return the case to the district court to first consider if Ag Partners should be permitted to reopen its case to introduce evidence on the value of the property prior to the incident giving rise to the claim for damages. If the district court grants the request by Ag Partners to reopen the record, a new trial shall be granted limited to the claim for repair costs based on the fault assigned by the jury in the first trial. If the district court does not grant Ag Partners' request to reopen the record, the judgment regarding loadout damages should be entered in favor of CCP.

---

[7]Under special circumstances, we may remand cases in the interest of justice for a new trial when there has been a failure of proof by the plaintiff. *See Beeck v. Aqua Slide 'N' Dive Corp.*, 350 N.W.2d 149, 162–63 (Iowa 1984). We recognize the property would have some value, which would entitle Ag Partners to some amount for the cost to repair damages. However, it is unnecessary to consider this remedy at this time. The error in the trial court proceeding allows us to remand the case for the district court to consider the proper remedy in the exercise of its discretion. As a court of review, our preference is to permit the trial court to make the initial decision, which then enables us to review that decision on a subsequent appeal.

**V.    Conclusion.**

We vacate the decision of the court of appeals that remanded the case for an entry of judgment in favor of CCP regarding the loadout damages. We otherwise affirm the decision of the court of appeals, and remand the case to the district court for a conditional new trial and further proceedings consistent with this opinion. The conditional new trial shall be limited to the issue of damages for the cost of repair to the loadout.

**DECISION OF COURT OF APPEALS AFFIRMED IN PART, VACATED IN PART, AND CASE REMANDED TO THE DISTRICT COURT FOR FURTHER PROCEEDINGS.**

All justices concur except Hecht and Appel, JJ., who take no part.