# IN THE COURT OF APPEALS OF IOWA

No. 21-1111
Filed January 27, 2022

**IN THE INTEREST OF N.H.,**
**Minor Child,**

**N.H., Minor Child,**
    Appellant.

_____

Appeal from the Iowa District Court for Polk County, Rachel E. Seymour, District Associate Judge.

A juvenile offender appeals a restitution order, alleging the district court assessment of restitution was not supported by substantial evidence, fell outside the scope of liability, or both. **AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**

Richelle Mahaffey of the Juvenile Public Defender's Office, Des Moines, for appellant juvenile.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General for appellee, State.

Considered by Greer, P.J., and Schumacher and Ahlers, JJ.

**SCHUMACHER, Judge.**

N.H. appeals a district court restitution order, alleging the assessment of restitution was not supported by substantial evidence, fell outside the scope of liability, or both. We determine the cost of the victim's letterman jacket does not fall within the scope of liability and vacate this portion of the restitution award. We determine the district court award for lost wages is within the scope of liability and supported by substantial evidence. We determine a reduction in the award for mileage is required based on the record of actual miles driven, the amount previously paid by Crime Victim Compensation, and by the miles driven to an attorney's office.

## I.  Background Facts & Proceedings

On October 7, 2020, N.H. assaulted A.M. at high school football practice. Both were students at the same high school. During the assault, N.H. removed A.M.'s helmet and struck him in the head repeatedly. The assault rendered A.M. unconscious, caused a concussion, a bloody nose, and bruising. A.M. was later diagnosed with a traumatic brain injury. On November 18, the State filed a delinquency petition alleging N.H. committed an assault causing bodily injury, in violation of Iowa Code sections 708.1(1) and 708.2(2) (2020). N.H. admitted to the offense on December 14. Without resistance, a consent decree was granted on January 28, 2021. The State filed a statement of pecuniary damages and a victim impact statement the same day.

Following the assault, A.M. struggled medically, emotionally, and academically. He withdrew from an advanced placement class. D.R., the victim's mother, testified that she believed A.M.'s school failed to accommodate and

protect A.M. after the assault and, as such, A.M. transferred to a new school. Such transfer occurred shortly after a no-contact order was put in place, prohibiting contact with the victim by N.H.[1] A.M.'s concussion meant he could not drive himself for a period of time, so his mother drove him to and from school, to medical appointments, and to an attorney's office. A.M. had twenty-three medical appointments in nineteen days. D.R. took paid time off (PTO) and used flex time to assist her son with transportation. D.R. testified she took six unpaid days off work and testified to her hourly rate of pay. She received $127.00 in compensation for mileage and $500.00 as partial payment for a security system from Crime Victim Compensation prior to the restitution hearing.

A restitution hearing was held May 27. At the hearing, the State requested restitution of $2487.00, representing lost wages by D.R., the remaining balance of the cost of a security system, mileage, and the cost of a letterman jacket.[2] The victim's mother testified. The district court ordered restitution of $1921.71, consisting of $1112.16 for D.R.'s lost wages, $446.55 for mileage, and $363.00 for the letterman jacket. The district court denied the request for the remaining balance of the security system cost.[3]

N.H. appealed the restitution order. The State moved to dismiss, alleging that a consent decree was not appealable and that the appropriate route was an application for discretionary review. In response, N.H. filed a resistance to the

---

[1] The no-contact order appears to have been utilized to facilitate the transfer and enrollment in the new school.

[2] The mileage calculation submitted by D.R. is contained in exhibit nine but is not attached to the victim impact statement in the pleadings.

[3] The State did not appeal the denial of the security system restitution.

dismissal and an application for discretionary review. Our supreme court denied the State's motion to dismiss and granted the application for discretionary review.

## II. Standard of Review

Our review of restitution orders is for correction of errors at law. *State v. Roache*, 920 N.W.2d 93, 99 (Iowa 2018). "When reviewing the restitution order, we determine whether the court's findings lack substantial evidentiary support, or whether the court has not properly applied the law." *State v. Bonstetter*, 637 N.W.2d 161, 164 (Iowa 2001). "Evidence is substantial when a reasonable mind would accept it as adequate to reach a conclusion." *Id.* (quoting *Hasselman v. Hasselman*, 596 N.W.2d 541, 545 (Iowa 1999)).

## III. Discussion

N.H. challenges several aspects of the district court restitution order. First, N.H. asserts the letterman jacket falls outside the scope of liability. Second, N.H. claims the award for mileage and lost wages are outside the scope of liability and not supported by substantial evidence.

### A. Restitution Framework

Iowa Code chapter 910 governs restitution. "Restitution orders may include payment of pecuniary damages to the victim," although section 910.1 "limits restitution for the victim's pecuniary damages to those recoverable in a civil action" and are unreimbursed. *Roache*, 920 N.W.2d at 100. It is the State's burden to prove damages that the victim suffered. *Bonstetter*, 637 N.W.2d at 170. Our supreme court has addressed how courts should determine restitution:

> In calculating a restitution order, the district court must find a causal connection between the established criminal act and the injuries to the victim. The damage must have been caused by the offender's

criminal act to justify the restitution order. Once the causal connection is established by a preponderance of the evidence, "the statute allows recovery of 'all damages' . . . which the state can show by a preponderance of the evidence." A restitution order is not excessive "if it bears a reasonable relationship to the damage caused."

*Id.* at 168 (citations omitted).

Causation includes both actual causation—the so called "but-for" causation—and scope of liability. *Roache*, 920 N.W.2d at 101. "The scope of liability issue is fact-intensive as it requires consideration of the risks that made the actor's conduct tortious and a determination of whether the harm at issue is a result of any of those risks." *Id.* (quoting *Thompson v. Kaczinski*, 774 N.W.2d 829, 838 (Iowa 2009)). Scope of liability is generally broader for intentional torts. *Id.*

When calculating the amount of restitution, "recovery may be had if there is proof of reasonable basis from which the amount may be inferred," so long as the award "is not speculative, possible or imaginary." *Id.* at 106. A restitution award will be upheld if "it is within the reasonable range of the evidence." *State v. Morris*, No. 19-1104, 2020 WL 4207399, at *2 (Iowa Ct. App. July 22, 2020).

## B. Letterman Jacket

N.H. claims the victim's letterman jacket falls outside the scope of liability for the assault. We agree. The letterman jacket falls outside the costs which could reasonably relate to the assault. The jacket was not damaged during the assault. *See id.* (finding restitution award was appropriate when a shooting caused bullet holes and blood stains in the victim's clothes and carpet). The amount submitted represents the cost of the jacket from the old school, purchased prior to the assault. But even if we interpret the claim to represent the cost of a replacement jacket,

such falls outside the scope of liability on these facts. The letterman jacket was purchased as a result of the perceived failure on the part of the school to accommodate and protect the victim after the assault. We determine the cost of the letterman jacket falls outside the scope of liability for N.H.'s assault.

### C.    Mileage

N.H. alleges the reimbursement for D.R.'s mileage costs is without substantial support. We determine an award of costs for 734.5 miles is supported by substantial evidence and within the scope of liability.[4] At the restitution hearing, D.R. claimed she drove 1145 miles, related to driving her son to and from school, to medical appointments, the extra mileage she incurred having to travel to and from work to drive her son, and miles driven to an attorney the family privately retained.[5] However, the documentation for the total mileage is reflected in the victim impact statement, which specifically accounted for 918.5 miles of travel D.R. incurred because of the assault. The record does not contain documentation or evidence for the additional mileage claimed.[6] D.R. did not testify as to a basis for any additional mileage. D.R. did not testify as to the mileage to the attorney's office, which equals 184 miles.[7] We are unable to determine from this record if the attorney's services were related to the assault, issues with the school, or other

---

[4] The district court awarded D.R. costs for 1145 miles at thirty-nine cents per mile for $446.55. The State concedes the district court erred by including $127.00 that had been reimbursed by Crime Victim Compensation.

[5] The State submitted a restitution claim for the fees paid to the lawyer for the victim, but withdrew that claim prior to hearing.

[6] D.R. testified during cross-examination that she submitted documentation to support her claim of 1145 miles. Such documentation does not appear in our record.

[7] The attorney did not appear at the hearing.

matters. The state concedes the attorney fees were not recoverable and does not cite support that the mileage to the attorney's office would be recoverable. We will uphold an order "if it bears a reasonable relationship to the damage caused." *Roache*, 920 N.W.2d at 100. We find the mileage documented on the victim impact statement, with the exception of the miles driven to the attorney's office, bears a reasonable relationship to the damage caused by N.H. We modify the district court order as to mileage costs incurred by D.R. documented in the secondary victim impact statement of 918.5 miles, less the miles claimed for transportation to the attorney's office.[8] We further reduce the mileage award by the amount paid by Crime Victim Compensation.

### D.    Lost Wages

N.H. contends there is not substantial evidence in this record for the award of D.R.'s lost wages and also asserts the claim falls outside the scope of liability. We reject this argument. We have held that costs incurred from lost wages by a parent's caretaking of a minor child can be recoverable in restitution orders. *State v. Jauregui*, No. 20-0629, 2021 WL 1663598, at *3 (Iowa Ct. App. Apr. 28, 2021). We similarly find D.R.'s lost wages falls within the scope of liability in this case. We note that this assault constitutes an intentional tort, which generally provides a broader scope of liability. *See id.* It is foreseeable that a minor, particularly one who suffered a concussion, would need assistance traveling to school and appointments. It is foreseeable that a parent would need to miss work, as is the

---

[8] Before hearing, D.R. claimed a different reimbursement mileage rate. As noted by district court order, D.R. later agreed to the rate of thirty-nine cents per mile utilized by Crime Victim Compensation.

case here, where D.R. helped transport her son to twenty-three medical appointments in less than a month. The costs of D.R.'s lost wages incurred because of her son's need for assistance with transportation fall within the scope of liability.

Substantial evidence supports the award of the actual amount of lost wages incurred by D.R. The record contains a job listing for D.R.'s former position with the State of Iowa, including the range of the hourly rate of pay. D.R. testified that she missed six unpaid days of work in her new position and testified to her previous rate of pay as well as her current rate of pay, including the slight increase in her hourly wage. The district court utilized the lower hourly rate of pay of $23.17 in computing lost wages. D.R. did not seek compensation for any of her expended vacation or PTO. *See id.* at *4 (finding expended PTO is not awardable as restitution because the victim "should not be compensated by both her employer and" the offender). Substantial evidence exists for the restitution order as it relates to lost wages. *See id.* (finding that the lack of documentary evidence for missed shifts meant there was insufficient evidence for restitution); *Morris*, 2020 WL 4207399, at *3 (finding that the lack of exhibits in the record showing the amount of medical bills was too speculative to award restitution for those expenses). D.R. submitted documentation and testified to her request for lost wages. The award was not speculative. We determine substantial evidence supports the award for lost wages.

## IV. Disposition

We find the letterman jacket falls outside the scope of liability and vacate the award related to the same. A correction is required in the calculation of

restitution for mileage to reduce the award to 734.5 miles at a rate of thirty-nine cents per mile, which represents the miles documented, minus the miles claimed for transportation to an attorney's office, and a reduction of $127.00 paid by Crime Victim Compensation. We affirm the remainder of the restitution order. We remand to the district court for entry of a restitution order consistent with this opinion. *See State v. McLachlan*, 880 N.W.2d 513, 516 n.5 (Iowa Ct. App. 2016) (discussing the utility of corrected district court orders relating to sentencing even though an appellate opinion resolves the issues).

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**